IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**TAFARI A. HAYNES**                                               **PLAINTIFF**

**VS.**                       **2:15-CV-01389-BRW**

**CLARION UNIVERSITY OF
PENNSYLVANIA,** *et al.*                                 **DEFENDANTS**

ORDER

Pending is Defendants' Motion for Summary Judgment. (Doc. No. 65). Plaintiff has responded.[1] Defendants filed a reply[2] and Plaintiff filed a sur-reply.[3] For the reasons set out below, Defendants' motion is GRANTED and this case is DISMISSED with prejudice. Defendants' Motion in Limine (Doc. No. 69) is DENIED as moot.

**I.    BACKGROUND**

Plaintiff, Tafari A. Haynes and K.S. were both full-time students in good academic standing at Clarion University of Pennsylvania ("Clarion") in 2013. On October 26, 2013, Plaintiff attended a party at K.S. house. Plaintiff expressed a romantic interest in K.S. and they went to a room to talk privately. What happens next is disputed. Plaintiff says they started kissing, but he never exposed himself and K.S. left the room.

In the early hours of October 27, 2013, K.S. or her roommate called the Clarion police and alleged Plaintiff raped her.[4] K.S. went to the hospital soon after and hospital staff performed a rape kit.[5] Later that day, Plaintiff was arrested by the Clarion police and eventually the state

---

[1]Doc. No. 85.

[2]Doc. No. 93.

[3]Doc. No. 96.

[4]Doc. No. 81, ¶1.

[5]Doc. No. 68-14, p. 7, 9.

filed criminal charges.  However, those charges were *nolle prossed* in January 2014 after K.S. advised the prosecution that she no longer wanted to pursue the charges.

After K.S.'s allegations and while the state-court charges were pending, Clarion initiated its own investigation pursuant to its Sexual Harassment Policy and Procedures.  The policy provided students facing discipline with a number of procedural protections, including an appeals process, though appeals are at the discretion of Clarion policy also provided for appeals, within three days of receiving the hearing decision, and at the discretion of Karen Whitney, the President of Clarion.

Immediately after learning of the rape allegation, but before any type of hearing, Plaintiff was suspended from Clarion and barred from campus,[6] which is permitted under Pennsylvania law.[7]  Upon commencing the investigation, Matthew Shaffer, Clarion's Coordinator of Judicial Affairs and Residence Life Education, interviewed Plaintiff, but Plaintiff generally exercised his constitutional right to remain silent.  Mr. Shaffer also told Plaintiff about the suspension.

Plaintiff also received a letter about the suspension, a "trial," and the "student discipline process."[8]  His adviser told him he should withdraw from classes, but Plaintiff's mother told him he could not.[9]  However, Plaintiff testified that he never contacted any Clarion officials about his suspension or disciplinary hearing.[10]

---

[6]Doc. No. 31, ¶¶24-26.

[7]Doc. No. 67, ¶25; 22 Pa. Code § 505.9.

[8]Doc. No. 68-6, pp. 18-19.

[9]Doc. No. 82-2, pp. 18-19, 22.

[10]Doc. No. 68-6, p. 19.

On November 18, 2013, Defendants notified Plaintiff, in writing, that he would have a disciplinary hearing on December 3, 2013.[11]  Based on advice from his lawyer, neither Defendant nor his lawyer attended the hearing.

Following the hearing, which involved previously sworn testimony from K.S. (where she was cross-examined by Plaintiff's lawyer) and the presentation of other evidence, Clarion's University Conduct Board ("UCB") decided to expel Plaintiff.  Plaintiff had until December 6, 2013 to appeal his expulsion, but he did not appeal until January 26, 2015.  The appeal was dismissed as untimely.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[12]  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[13]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[14]

---

[11]Doc. No. 67, ¶56.

[12]Fed. R. Civ. P. 56.

[13]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[14]*Id.* at 248.

III.    **DISCUSSION**

Plaintiff brought seven claims against the Defendants,[15] all based on Plaintiff's

suspension and expulsion from Clarion following his UCB hearing.[16]  He alleges Defendants'

violated Title IX, his right to procedural and substantive Due Process, and his right to Equal

Protection.[17]  He also brings claims for defamation, negligence, negligent infliction of emotional

distress, and for injunctive relief.[18]

A.    **Title IX**

Title IX of the Education Amendments of 1972 prohibits discrimination on the basis of

sex in exclusion from or participation in any educational program receiving federal financial

assistance.[19]  Defendants admit they are subject to Title IX.[20]

Both parties acknowledge that neither the Supreme Court nor the Third Circuit has

provided a standard for determining intentional discrimination under Title IX based on either the

initiation or outcome of a student disciplinary proceeding.[21]  They appear to agree, however, that

the Second Circuit identified two categories of actionable claims: (1) erroneous outcome, and (2)

---

[15]Doc. No. 31.

[16]Doc. No. 67, at ¶¶74-75; Doc. No. 80, at ¶¶74-75 .

[17]Doc. No. 31, pp. 12-22.

[18]*Id.* at 22-26.

[19]20 U.S.C. §1681(a).

[20]Doc. No. 66, p. 3.

[21]Doc. No. 66, pp. 3; Doc. No. 85, p. 2.

selective enforcement.[22] Plaintiff argues he has a free-standing Title IX deliberate indifference claim as well.[23]

### 1. Erroneous Outcome

To prove a claim of erroneous outcome, a plaintiff must present evidence that casts some articulable doubt on the accuracy of the disciplinary outcome.[24]  A plaintiff must also show a causal connection between the "flawed outcome" and gender bias.[25]  Plaintiff has failed to provide evidence for doubt in the outcome or gender bias.

Plaintiff can have little complaint about the UCB's ultimate decision, since he failed to appear and give his side of the story or submit a written statement.  Plaintiff did not ask his advisor for assistance. He also fails to acknowledge the evidence supporting the outcome.

Plaintiff argues the "absence [of his DNA from the rape kit] goes to the heart of satisfying a showing of an erroneous outcome."[26]  However, the DNA evidence is consistent with K.S.'s sworn testimony, which he did not rebut at the hearing.

Plaintiff also belatedly objects to the testimony of a "counselor" given in the UCB hearing.  However he waived any objection by failing to participate in the proceedings.  Even without the disputed testimony, the UCB had the police report and K.S.'s account of the alleged rape.  While some of her statements regarding times of events changed, the details of the alleged rape were consistent between multiple statements and sworn testimony.  Moreover, if the UCB

---

[22]Doc. No. 66, pp. 3-19; Doc. No. 85, pp. 2-12; *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994).

[23]Doc. No. 85, pp. 12-13; Doc. No. 31, p. 15.

[24]*Yusuf*, 35 F.3d at 715.

[25]*Id.*

[26]Doc. No. 85, p. 9.

believed K.S.'s statements, then they would expect an absence of Plaintiff's DNA in the rape kit. K.S. testified under oath that she pushed Plaintiff off of her before ejaculation.

The evidence before the UCB, and then before President Whitney, was sufficient to support the outcome.  The UCB simply believed K.S., as did the police and prosecutor. Although exculpatory evidence exists, this record cannot support a claim for erroneous outcome.

Plaintiff has also failed to provide a basis for a finding of gender bias.  He has not pointed to any instance where a female student facing criminal prosecution for forcible rape of a fellow student was treated more favorably.

Plaintiff attempts to show bias by the difference in treatment between himself and K.S. His argument that Defendants' preferable treatment of an alleged rape victim over an alleged rapist evidences bias is without merit.

## 2.  Selective Enforcement

To support a selective enforcement claim Plaintiff must have some evidence that the decision to initiate the proceeding or the resulting punishment was affected by his gender, regardless of his guilt or innocence.[27]  Plaintiff claims "a gender bias can be inferred in [his] case when one considers that [K.S.] was treated much more favorably throughout the administrative process by Clarion officials."[28]  This allegation misses the point.

A male plaintiff must have evidence "that a female was in circumstances sufficiently similar to his own and was treated more favorably" to prevail on a selective enforcement claim.[29]

---

[27]*Yusuf*, 35 F.3d at 715-716.

[28]Doc. No. 85, p. 11.

[29]*Doe v. The Trustees of the University of Pennsylvania,* 270 F .Supp. 3d 799, 824 (E.D.Pa. 2017).

So the question here is whether Defendants would have initiated disciplinary action and expelled a female student criminally charged with the forcible rape of a fellow student. Plaintiff has not identified a female, or anyone, who was charged with forcible rape, who was treated more favorably by Clarion.

Plaintiff notes that between 2009 and 2013, the UCB heard thirteen separate complaints of sexual harassment or sexual assault filed by women against twelve male students.[30] The male students were found responsible in nine of the thirteen complaints, which is just under 70% of the time.[31] Plaintiff alleges this is proof Clarion disciplinary proceedings "invariably" end adversely to males. Clearly, 70% is not invariably, and Plaintiff's reference to no contact orders between the parties does not change this calculus.[32] Plaintiff failed to provide evidence of a single instance showing a student charged with committing a violent felony against another student being treated differently than Clarion treated Plaintiff based on gender.

### 3. Deliberate Indifference

Defendants dispute the existence of a stand-alone Title IX deliberate indifference cause of action. I do not find support for the existence of such a claim in either the text of Title IX or the case law in this Circuit. Even if this cause of action exists, the record here supports summary judgment for Defendants.

A stand-alone deliberate indifference claim requires a showing that an institution official had actual notice of misconduct and failed to correct it.[33] The alleged "misconduct" is Ms.

---

[30]Doc. No. 81, pp. 18-19.

[31]Doc. No. 85, p. 10.

[32]Clarion instituted no contact orders against students accused of sexual assault.

[33]*Id*. at 12.

Whitney's refusal to reconsider the results of the disciplinary hearing after being presented with DNA evidence.[34]

Again, the evidence before the UCB and Ms. Whitney was sufficient to support their decision. The absence of Plaintiff's DNA in the Rape Kit is consistent with K.S.'s sworn statements, that the forcible rape ended before ejaculation.  Public policy would also appear to strongly discourage Ms. Whitney from considering part of the DNA results, whether or not K.S. had consensual sex with anyone other than Plaintiff the night of the alleged rape.[35]

**B.     Due Process**

Plaintiff claims Defendants violated his procedural and substantive Due Process rights when conducting the disciplinary hearing and expelling him.[36]  Defendants argue that Plaintiff waived these claims by failing to engage in the disciplinary proceedings and skipping the hearing.  I agree.  Plaintiff never contacted any Clarion official for any purpose from the date of his suspension until over a year after the hearing.  Regardless of waiver, I find no Due Process violations.

---

[34]*Id*. at 12-13.

[35]"Evidence of specific instances of the alleged victim's past sexual conduct . . . shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence." 18 Pa.C.S.A. § 3104(a).

[36]Doc. No. 31, pp. 16-19.

### 1. Procedural Due Process

The Due Process Clause protects students during disciplinary hearings at public institutions.[37]  At a minimum, a student is entitled to notice and an opportunity to be heard.[38]  A court should also consider the *Mathews* factors when evaluating a Due Process claim: "(1) the private interests at stake, (2) the governmental interests at stake, and (3) the fairness and reliability of the existing procedures and the probable value, if any, of additional procedural safeguards."[39]

Plaintiff received notice of his interim suspension and the reasons for it; notice of his hearing and the hearing procedures; and notice of possible sanctions.  The hearing procedures gave Plaintiff the opportunity to be heard. Contrary to Plaintiff's argument, he has no right to publicly defend himself without any potential repercussions.

Clarion's hearing procedures allowed counsel to attend the hearing with Plaintiff, at Plaintiff's expense, but counsel could not participate.[40]  I find no constitutional right to active

---

[37]*Simms v. Pennsylvania State University-Altoona*, No. 3:17-cv-00201-KRG, 2018 WL 1413098, at *4 (W.D. Pa. Mar. 20, 2018)(citing *Phat Van Le v. Univ. of Med. & Dentistry of N.J.*, 379 Fed. Appx. 171, 174 (3d Cir. 2010) (unpublished)).

[38]*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

[39]*Palmer v. Merluzzi*, 868 F.2d 90, 95 (3d Cir. 1989) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)); see also *Simms*, 2018 WL 1413098, at *4 (applying *Mathews* factors); *Johnson v. Temple Univ.*, No. 12–515, 2013 WL 5298484, at *7-8 (E.D. Pa. Sept. 19, 2013)(applying *Mathews* factors); *Osei v. Temple University of Commonwealth System of Higher Educ.*, 10–2042, 2011 WL 4549609, at *8 (E.D. Pa. Sept. 30, 2011)(applying *Mathews* factors); *Furey v. Temple Univ.*, 884 F. Supp. 2d 223, 247 (E.D. Pa. 2012)(applying *Mathews* factors).

[40]This satisfied any right Plaintiff had to counsel at the disciplinary hearing. See *Simms*, 2018 WL 1413098, at *5-6; but see *Coulter v. East Stroudsburg University*, No. 3:10–CV–0877, 2010 WL 1816632, at *3 (M.D. Pa. May 5, 2010) (granting preliminary injunction and holding student facing simultaneous criminal sanctions and academic discipline has right to active participation of counsel during disciplinary hearing).

participation of counsel in student disciplinary hearings, even when the student is facing concurrent criminal charges.[41]

The hearing procedures did not allow cross-examination of an alleged rape victim. Plaintiff provided no support for a constitutional right under the Due Process or Confrontation Clause to cross-examination of alleged sexual assault victims in university disciplinary hearings.

Plaintiff ultimately did not attend on advice of counsel. It is undisputed that he received notice and an opportunity to be heard.  Accordingly, Plaintiff received all procedural process due under the Constitution.

Considering the *Mathews* factors, I find Plaintiff had a private interest in continuing his education.  Expulsion was the most serious sanction available to the UCB.  The failing grades and disciplinary mark on Plaintiff's transcript could have negative impacts in the future.

Plaintiff alleged the "negative marks on [his] record inhibited or destroyed his ability to enroll in a similarly ranked and esteemed college or university" and that he suffered "humiliation, mental anguish, severe emotional distress, physical harm, financial loss, and loss of educational, social and occupational opportunities" as a result.[42]  The record shows, however, that after a year of community college, Plaintiff enrolled in Temple University.[43]  His employment while in college went from McDonald's, while attending Clarion, to Barnes &

---

[41]*Simms*, 2018 WL 1413098, at *6 (citing *Gabrilowitz v. Newman*, 582 F.2d 100, 106 (1st Cir. 1978) and *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993) for support); but see *Coulter*, 2010 WL 1816632, at *3.

[42]Doc. No. 31, ¶¶137-138.

[43]Doc. No. 68-6, pp. 21-22.

Noble while attending Temple.[44]  I cannot assume future, speculative harm when the record evidences none.

Plaintiff was one of many students at Clarion with the same private interest.  Clarion's interest in campus safety substantially outweighs each student's interest in continuing their education at a specific institution.  Defendants had information that a student alleged another student forcible raped her.  The allegations were sufficient to arrest Plaintiff.  Plaintiff essentially argues Clarion was required to let him attend classes and travel freely on campus until the criminal proceedings concluded at some indeterminable time in the future.  Instead, Defendants took reasonable action in immediately suspending Plaintiff and promptly scheduling a hearing so he could present his side of the story.

By the time of the UCB hearing, Plaintiff had already been through a preliminary criminal hearing where K.S. testified under oath, subject to cross-examination.  There was sufficient evidence to sustain the criminal charges against Plaintiff.  Clarion's interests in preventing a student arrested and criminally charged with forcible rape of another student from attending classes, and even being on campus, greatly outweighed the individual, private interest at stake.

Plaintiff failed to test the fairness and reliability of the existing procedures by skipping the UCB hearing and failing to submit any statements or evidence on his behalf.  Defendants ultimately provided more procedural protections than required under either federal or state law.

I find little, if any, value in the potential, additional procedural safeguards listed by Plaintiff's proposed expert, Gregory S. Blimling, Ph.D.[45]  Dr. Blimling's opinions are based on

---

[44]*Id.* at 10.

[45]Doc. No. 70-1.

unsupported conclusions and have little basis in law or fact. For instance, I disagree with the conclusion that a student charged with forcible rape of another student poses no physical threat to others. Defendants were under no "obligation" to allow an accused rapist to stay in school and on campus.[46]  Dr. Blimling also faults Defendants for both delaying and not delaying the hearing.[47]

Dr. Blimling believes Defendants should have offered the option for Plaintiff to voluntarily withdraw.[48]  It is undisputed that Plaintiff's advisor made two attempts to withdraw Plaintiff but his mother convinced him to "stay the course."

Plaintiff and Dr. Blimling fault Defendants for not offering other options he never requested or pursued.  Plaintiff never contacted any official at Clarion at any time from his arrest until his appeal a year after expulsion to ask for any accommodation.  Moreover, Mr. Tripp's suspension letter specifically advised Plaintiff that he could contact Mr. Shaffer if he wanted to "request to be on campus for a particular business or academic reason."[49]

Dr. Blimling also notes student disciplinary hearings are not designed to adjudicate violent felonies.[50]  That is true, but Plaintiff was facing criminal charges in the state court.  At the time of the UCB hearing, Plaintiff already had a preliminary criminal hearing where K.S. testified, under oath, subject to cross-examination.  There was sufficient evidence to proceed

---

[46]Doc. No. 70-1, p. 5.

[47]*Id*. at 5-6, 8-9.

[48]*Id*. at 8.

[49]Doc. No. 67, ¶¶ 43-46.

[50]Doc. No. 70-1, p. 14.

with the prosecution for alleged violent felonies.  The argument that Clarion could not suspend

Plaintiff and the UCB could not expel him based on this evidence is without merit.

### 2.  Substantive Due Process

Whether or not Plaintiff has any substantive Due Process rights here is questionable.[51]

Because I find an interest subject to procedural Due Process protections, I find protections

against the arbitrary taking of that interest.

To survive summary judgment, Plaintiff must have evidence Defendants acted "through

an arbitrary and deliberate abuse of authority."[52]  Plaintiff claims this occurred when Defendants

"conducted a biased investigation," expelled Plaintiff with inadequate evidence of guilt, and

refused to reconsider their decision.[53]

There is no evidence that Mr. Shaffer's investigation involved sex, gender, or racial

bias.[54]  A reasonable juror could find, however, that Mr. Shaffer's investigation was not strictly

impartial.

It appears clear from the record that Mr. Shaffer believed K.S. and presented the case to

the UCB in a light reflecting that belief.  Plaintiff, however, does not have a right to a strictly

---

[51]See *Simms*, 2018 WL 1413098, at *9 ("interest in pursuing college education differs greatly from the rights which federal courts have found to be fundamental in the Constitutional sense"); *Valentine v. Lock Haven Univ. of Pennsylvania of the State Sys. of Higher Educ.*, No. 4:13–cv–00253, 2014 WL 3508257, at *6 (M.D. Pa. July 14, 2014) (payment of tuition and graduate education were not fundamental rights entitled to substantive due process protection.); *Mauriello v. University of Medicine & Dentistry*, 781 F.2d 46, 52 (3d Cir. 1986) (expressing "doubt about the existence" of a substantive due process right in a student's continued enrollment in a university graduate program).

[52]*Kadakia v. Rutgers*, 633 Fed. Appx. 83, 86-87 (3d Cir. 2015)(citing *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000)).

[53]Doc. No. 31, ¶92.a-c.

[54]*Id*. at ¶92.a.

impartial presentation of evidence.  Instead, Due Process requires only an impartial decision-maker or UCB. Plaintiff does not even allege the UCB was biased.

A decision-maker must generally rely on some evidence, otherwise the decision is arbitrary.[55]  Plaintiff argues the evidence of his guilt was inadequate.  As noted by Defendants, courts all over the country have found evidence similar to this record sufficient to uphold rape convictions.[56]  The constitutional threshold for sufficient evidence cannot be higher for expulsion from a university than for life in prison.  Considering the evidence, including the DNA evidence and Plaintiff's deposition testimony, the decision to expel Plaintiff and place that decision on his transcript was well-supported by the record.

Plaintiff had no right requiring Defendants to "reconsider their decision" to expel him.  Consideration of an appeal is discretionary.[57]  Even if Plaintiff had such a right, Ms. Whitney acted reasonably in denying reconsideration.  Plaintiff's appeal was untimely and the grounds for appeal failed, as a matter of law, to establish innocence.

C.      Equal Protection

Plaintiff appears to allege Equal Protections violations based on race, sex, and by being an accused rapist.[58]  His only plausible Equal Protection claim is based on race.[59]

---

[55]*Id*. at ¶ 92.b.

[56]Doc. No. 66, pp. 6-9.

[57]22 Pa. Code § 505.8.

[58]Doc. No. 31, ¶¶99-111.

[59]*Than v. Radio Free Asia*, 496 F. Supp. 2d 38, 46 (D.D.C. 2007) (male Title VII claimant was a member of a historically favored group, meaning did not belong to a protected class).

For support, Plaintiff offers Clarion's UCB statistics and an email from Mr. Shaffer.  This evidence falls far short of supporting this claim.

Between 2009 and 2013, seven of the twelve students Clarion referred to the UCB for sexual misconduct were African-American.  Yet African-Americans made up a small portion of the Clarion student body.  It is undisputed, however, that the UCB only heard student complaints alleging sexual misconduct.  It did not independently determine whether to initiate proceedings like a prosecutor would.  If students made allegations of sexual misconduct against black students when they would not make the same allegation against a white student, that may be evidence of bias or prejudice within the student body.  Plaintiff has not provided evidence, required here, showing that any Defendant treated similarly situated students differently based on race as opposed to the accusations in each individual case.  Plaintiff has failed to show any instances where a student alleged a white student forcibly raped them and the white student was treated more favorably than Plaintiff.

The limited number of Clarion sexual assault disciplinary hearings show that 57% of African-American students who faced the UCB were expelled while only 33% of "similarly situated" Caucasian students were expelled.[60]  These unremarkable statistics do not make up for the absence of evidence specifically supporting Plaintiff's case.

Three out of four UCB exonerations were given to African-American students.  Though African-American students made up only 5.9% of the school population, African-American students received 75% of exonerations.  So by Plaintiff's flawed calculation, African-American students were 57 times more likely to be found not responsible if faced with sexual misconduct

---

[60]Doc. No. 85, p. 32.

hearings than "similarly situated" white students.  These napkin top statistics can make a point that does not exist.  That is why courts must consider the difference in protection for similarly situated individuals or groups.

Despite his arguments to the contrary, Plaintiff has not identified any other student "similarly situated" who was treated differently.  There is no evidence any other student was charged with forcible rape and not expelled.

Plaintiff claims an email from Mr. Shaffer comparing Plaintiff's situation to that of O.J. Simpson evidences discrimination.[61]  This email was written after expulsion, in reference to Plaintiff's appeal.  The email refers to the difference in criminal and noncriminal proceedings, or how O.J. Simpson was found not guilty of murder, but still civilly liable.

Plaintiff all but admitted in his deposition that the O.J. Simpson comment was not discriminatory.[62]  This comment by Mr. Shaffer is insufficient evidence Ms. Whitney discriminated against Plaintiff based on his race when declining to reconsider his appeal.  At most, the email reflects one of Plaintiff's arguments, that Mr. "Shaffer's not-so-subtle message to [Plaintiff] was that [he] might have wiggled free of the criminal justice system, but that Clarion would hold him accountable."[63]

### D.      State Law Claims

Plaintiff brings state-law claims for defamation, negligence, and negligent infliction of emotional distress. Defendants are entitled to Sovereign Immunity on these claims.

---

[61]Doc. No. 31, ¶¶54-58, 107.

[62]Doc. No. 68-6, p. 24.

[63]Doc. No. 85, p. 33.

16

Pennsylvania has not waived immunity regarding tort or negligence based claims related to student discipline.[64]  The conduct behind Plaintiff's claims all fall within the scope of Defendants' employment.[65]  Regardless of immunity, Plaintiff has failed to support these claims.

### 1. Defamation

At a minimum, Pennsylvania law requires Plaintiff to prove a defamatory communication and resulting harm.[66]  A defendant is not liable for an alleged defamatory communication if the communication is "substantially true."[67]  The alleged defamatory communication here was substantially true.  Clarion's UCB found Plaintiff more likely than not raped another student.  As a result, Clarion expelled Plaintiff and he failed classes.

Plaintiff did not allege defamation per se so his claim requires proof of a specific monetary or out-of-pocket loss as a result of the allege defamatory communication.[68]  Plaintiff alleged the "negative marks on [his] record inhibited or destroyed his ability to enroll in a similarly ranked and esteemed college or university" and that he suffered "humiliation, mental

---

[64]See *Wei Ly v. Varner*, No. 2:13-cv-01102-CRE, 2015 WL 5098736, at *5 (W.D. Pa. Aug. 31, 2015) (listing the areas Pennsylvania has waived immunity involving the negligence of State officials).

[65]See *Aina v. Howard-Vital*, No. 13–2702, 2013 WL 5567798, at *6 (E.D. Pa. Oct. 9, 2013) (allegedly defamatory statements at university disciplinary meeting were within the scope of state actor's employment) (citing in *Obotetukudo v. Clarion University,* 13–0639, 2014 WL 3870003, *12 (W.D.Pa., Aug. 6, 2014)).

[66]*Kelley v. Pittman*, 150 A.3d 59, 67 (Pa. Super. 2016) (defamation claims require proof of: (1) The defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion).

[67]*Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014).

[68]*Synygy, Inc. v. ZS Associates, Inc.*, 110 F. Supp. 3d 602, 617 (E.D. Pa. 2015).

anguish, severe emotional distress, physical harm, financial loss, and loss of educational, social and occupational opportunities" as a result.[69]  Plaintiff has not established harm from any of the Defendants' communications. Instead, the record shows that after a year of community college, Plaintiff enrolled in Temple University.[70]  His employment while in college went from McDonald's while attending Clarion to Barnes & Noble while attending Temple.[71]  Without both a defamatory communication and resulting harm, Plaintiff's defamation claim fails.

### 2. Negligence

To prove negligence, Plaintiff must establish a duty owed him by Defendants, breach of that duty, actual harm, and a causal connection between the breach of duty and harm.[72]  Future, speculative harm is insufficient.

Plaintiff failed to show either breach of a duty owed him or actual harm.  If Defendants owed Plaintiff any duty, it was to accurately reflect his record.  Concealing or removing Plaintiff's disciplinary action, expulsion, and failing grades would not accurately reflect the fact that he was expelled for a disciplinary violation and failed classes as a result.  In fact, Plaintiff testified he has not suffered the specific harm alleged in his complaint.[73]

---

[69]Doc. No. 31, ¶¶137-138.

[70]Doc. No. 68-6, pp. 21-22.

[71]*Id*. at 10.

[72]*Kelley*, 150 A.3d at 67.

[73]Doc. No. 68-6, pp. 10, 21-22.

### 3.  Negligent Infliction of Emotional Distress

Plaintiff's claim for negligent infliction of emotional distress alleges a violation of a contractual or fiduciary duty.[74] Plaintiffs who allege negligent infliction of emotional distress must generally suffer immediate and substantial physical harm.[75]  Plaintiff's deposition testimony shows he did not suffer the requisite physical harm. But this claim fails for a another reason.

All of the conduct Plaintiff complains of was intentional, not negligent.  Defendants intentionally suspended Plaintiff; intentionally brought student discipline charges against him; intentionally expelled Plaintiff; intentionally recorded his expulsion and failing grades on his transcript; and finally, they intentionally provide the transcript evidencing such when requested. Accordingly, Plaintiff's negligent infliction of emotion distress claim fails as a matter of law.[76]

### E.    Injunctive Relief

Prospective injunctive relief against a state actor is only appropriate when a party is facing ongoing violations of federal law that cannot be compensated monetarily.[77]  The lack of an ongoing federal violation is fatal to this claim.

---

[74]Doc. No. 31, ¶¶133-138.

[75]*Doe v. Philadelphia Community Health Alternatives AIDS Task Force*, 745 A.2d 25, 27-28 (Pa. Super. 2000), aff'd, 767 A.2d 548 (Pa. 2001).

[76]*DiSalvio v. Lower Merion High School Dist.*, 158 F. Supp. 2d 553, 561 (E.D. Pa. 2001).

[77]*Christ the King Manor, Inc. v. Secretary U.S. Dept. of Health and Human Services*, 730 F.3d 291 (3d Cir. 2013).

### F.      Qualified Immunity

Qualified immunity protects state actors from liability when their conduct does not violate clearly established statutory or constitutional rights.[78]  To overcome qualified immunity, a plaintiff must show the contours of the right were sufficiently clear that any reasonable state actor would understand their conduct violated that right.[79]  Absent Supreme Court precedent clearly establishing the right, a plaintiff must identify a "robust consensus of cases of persuasive authority in the Court[s] of Appeals."[80]

Defendants argue they are entitled to qualified immunity on Plaintiff's Title IX and Due Process claims.[81]  I agree with Plaintiff that the statutory right under Title IX to be free from discrimination in an educational setting based on sex is clearly established.[82]  Plaintiff, however, does not identify cases outlining the extensive Due Process protections he claims.[83]

No court has clearly established a constitutional right to cross-examine an alleged rape victim during a university disciplinary hearing.[84]  No court has clearly established a constitutional right to an attorney at all stages of university disciplinary proceedings.[85]  As an adult, Plaintiff had no constitutional right to parental notification or representation.

---

[78]*Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[79]*Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 168-169 (3d Cir. 2016).

[80]*Id*. at 169 (quoting *Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015)).

[81]Doc. No. 66, pp. 18-19, 26.

[82]Doc. No. 85, pp. 13-14.

[83]Doc. No. 85, p. 26; Doc. No. 96.

[84]Doc. No. 31, ¶91.b.

[85]Doc. No. 31, ¶91.c.

Due Process may require a meaningful opportunity to appeal a disciplinary finding and sanction.  But no court has clearly established a constitutional right to the appeal rights Plaintiff claims.[86]  Courts have routinely upheld appeal deadlines.  The future existence of exculpatory evidence does not change this.  There is also no constitutional requirement that Defendants "reconsider their decision" at indeterminate times after the hearing.[87]

No court has clearly established Plaintiff's asserted constitutional right to "participate [in a university disciplinary hearing], without fear that [the] statements might be used against [the accused] in [an] ongoing criminal investigation.[88]  Not even criminal defendants, facing life in prison, loss of child custody, or loss of employment, have a constitutional right to make public statements without fear that the statements could be used against them in the future.

Defendants did not violate any of Plaintiff's procedural due process rights.  Even if I found constitutional violations, they would be entitled to qualified immunity on the procedural claims.  Defendants are also entitled to immunity on Plaintiff's substantive due process claims.

Absent prohibited discrimination, there is no clearly established constitutional right to a strictly impartial student disciplinary investigation.  Certainly no court has found a constitutional right to skip a disciplinary hearing, give no evidence on your own behalf, wait over a year to appeal when the appeal deadline is three days, and then have your disciplinary decision rescinded as though it never happened.

---

[86]Doc. No. 31, ¶91.d.

[87]Doc. No. 31, ¶92.c.

[88]Doc. No. 31, ¶91.a.

**CONCLUSION**

Though I find no constitutional, statutory, or State law violations here, I recognize the impact this case has had on all involved. Courts in the future may recognize or expand federal protections to cover Plaintiff's claims in this case.  The State of Pennsylvania could also provide a mechanism for amending university transcripts in situations presented here.

Based on the findings of fact and conclusions of law above, Defendants' motion for summary judgment (Doc. No. 65) is GRANTED and this case is DISMISSED with prejudice Defendants' Motion in Limine (Doc. No. 69) is DENIED as moot.

IT IS SO ORDERED this 27th day of June, 2018.


/s/ Billy Roy Wilson_____
 UNITED STATES DISTRICT JUDGE